UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALDEN SEAMANS, :
JOANNE SEAMANS, :
 :
    Plaintiffs, :
 :
v. : Case No. 3:15-cv-1695(RNC)
 :
TOWN OF CANTON, :
MARK SELANDER, :
MARTIN MILLER, :
ANDREW SCHIFFER, :
CHRISTOPHER ARCIERO, :
MARK PENNEY, :
 :
    Defendants. :

## RULING AND ORDER

Plaintiffs Alden and Joanne Seamans bring this action under 42 U.S.C. § 1983 against the Town of Canton and the following members of its Police Department: Officer Mark Selander, Officer Martin Miller, and Officer Andrew Schiffer.[1] Plaintiffs claim that Officers Miller and Schiffer falsely arrested Mr. Seamans, that they used excessive force in effecting the arrest, that each of them failed to intervene to protect him against the other's unlawful conduct, and that Officer Selander also failed to intervene, all in violation of the Fourth Amendment and common law. Plaintiffs further claim that the Town is liable pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), on the theory that it failed to adequately supervise and train Officers Miller and Schiffer. Defendants

---

[1] Claims against Chief Christopher Arciero and Sergeant Mark Penney have been withdrawn.

have moved for summary judgment on all the claims. For reasons set forth below, the motion is granted as to the claims against the Town but denied as to the other claims.[2]

I. Background

The record, viewed most favorably to the plaintiffs, shows the following. On February 15, 2016, Mr. Seamans, then 77 years of age, drove his 1995 Ford F-150 pick-up truck to a Shop Rite grocery store in Canton. He tried to park in a spot close to the entrance but was unable to enter the spot due to the truck's large turning radius. He looped around the next aisle to return to the spot at a better angle and, in his words, was driving "fast, faster than [he] should have." When he arrived back at the spot, another car, driven by Linda Morad, "looked like it wanted to pull in." He nonetheless "yanked" his truck into the spot. Morad parked a few spots away.

After Morad and Seamans exited their vehicles, she began yelling at him about the parking spot. She accused him of hitting a Buick parked in the space directly in front of his truck. He inspected the Buick and saw scratches on the bumper,

---

[2] Plaintiffs' initial response to the motion for summary judgment did not address the claim against Officer Selander. Defendants argue the claim should therefore be deemed abandoned. Plaintiffs' counsel explained at oral argument and in a supplemental brief that there was no intention to abandon the claim, however, and the defendants have been given an opportunity to respond to plaintiffs' arguments. Because the interests of justice weigh in favor of resolving claims on the merits, I do not deem the claim abandoned.

2

but noticed there was rust in the scratches.  He also noticed
that the bumper on his truck was higher than the bumper on the
Buick.  He explained to Morad that for these reasons, he could
not have hit the Buick.  Despite his explanation, she threatened
to call the police.  He said he was going into the store to get
strawberries and would not "put up with [her] shit."

Seamans purchased two packages of strawberries and exited
the store.  To his surprise, two police cars and at least two
officers were near his truck.  When he approached, Officers
Selander and Schiffer instructed him to stand near the back of
his truck.  Several more officers arrived, including Officers
Miller and Penney.  When questioned by the officers, Seamans
explained that he could not have hit the Buick in view of the
rust in the scratches and the height of the bumpers.  One of the
officers told him to "shut up" and stand near one of the police
vehicles.  After standing there for about thirty minutes, Seamans
told the officers that he wanted to go home and was "sick of this
crap."

Officers Miller and Schiffer told Seamans to put his hands
behind his back.  One or both of the officers "leaned [him] down
over the car."  Officer Schiffer grabbed his left arm and twisted
it behind his back tearing the rotator cuff.  At around the same
time, Officer Miller grabbed Seamans's right arm, and Seamans
"stiffened it."  Officer Miller then grabbed and twisted

Seamans's right thumb (a "pain compliance" technique), he loosened up, and Miller pulled his right arm behind his back, enabling the officers to place him in handcuffs.[3]  Once in handcuffs, they placed him in the back of a police vehicle.  He asked, "What the hell are you guys doing this for?"  One of the officers responded, "You are impeding an investigation."

While in the police vehicle, Seamans experienced discomfort due to the injury to his left shoulder.  In addition, the handcuffs were tight and caused bruising to his wrists.  He complained to the officers that he was in great pain, was 77 years old, and had a heart condition.  One of the officers responded, "Well, you should have thought of that."  However, one of the officers did remove the handcuffs.

At some point, the officers located the owner of the Buick. Through the window of the police cruiser, Seamans said to the owner, "Hey, I never hit your car."  The owner responded, "Of course you didn't, that's been there for six months."  Seamans was allowed to leave approximately thirty to forty minutes after his interaction with the officers began.  He spent four to eight minutes in the police car.

II. <u>Legal Standard</u>

Summary judgment may be granted when there is no genuine

---

[3] At one point in his deposition, Seamans stated that he did not "resist."  He did admit, however, to stiffening his right arm, and said the officers "couldn't have got" his right arm behind his back if Miller hadn't grabbed his thumb.

issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether the moving party is entitled to judgment as a matter of law, a court must review all the evidence in the record. In doing so, however, the court must view the evidence in the light most favorable to the opposing party. Id. at 255. Under this standard, all evidence supporting the position of the opposing party must be credited, with any ambiguities resolved and all reasonable inferences drawn in favor of that party. Importantly, although it is necessary to review the record as a whole, evidence supporting the position of the moving party must be disregarded unless a jury would have to credit the evidence because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice & Procedure § 2529, at 300 (2d ed. 1995)). It is essential that care be taken in applying this standard in order to preserve and protect the Seventh Amendment right to trial by jury, which is undermined by excessive use of summary judgment. See A. Miller, The Pretrial Rush To Judgment: Are "The Litigation Explosion," "Liability

5

Crisis," and Efficiency Cliches Eroding Our Day In Court and Jury Trial Commitments?, 78 N.Y.U. L. Rev. 982 (2003).

III. Discussion

Defendants contend that they are entitled to summary judgment because the evidence does not support a Fourth Amendment claim against any of the defendants and the individuals are protected by qualified immunity. I agree that the evidence does not support a claim against the Town. However, accepting the plaintiffs' version of events, I conclude that the evidence adequately supports claims against the officers and that the officers are not entitled to qualified immunity.

   A. False Arrest

Plaintiffs claim that Officers Miller and Schiffer arrested Mr. Seamans without probable cause. Defendants admit probable cause was lacking. They contend, however, that their seizure of Seamans did not exceed the bounds of a reasonable investigatory stop. Because defendants admit they did not have probable cause for an arrest, a finding that Seamans was arrested would support a verdict in favor of the plaintiffs. I conclude that the record adequately supports such a finding.

Whether the stop evolved into an arrest depends on the diligence of the police in resolving reasonable suspicion that Seamans had engaged in unlawful activity, and the nature and duration of the restraints they placed on his liberty.

"[O]fficers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes," or an investigatory stop may ripen into an arrest. See United States v. Bailey, 743 F.3d 322, 339 (2d Cir. 2014). Relevant factors include: "(1) the length of time involved in the stop; (2) its public or private setting; (3) the number of participating law enforcement officers; (4) the risk of danger presented by the person stopped; and (5) the display or use of physical force against the person stopped, including firearms, handcuffs, and leg irons." United States v. Newton, 369 F.3d 659, 674 (2d Cir. 2004).

Assessing these factors in light of Mr. Seamans's account of the incident, a jury could find that the stop turned into an arrest. At the outset, Seamans pointed out that the only visible damage to the Buick could not have been caused by his truck. He was told to "shut up" and move away from the officers. He complied. After a prolonged detention lasting approximately thirty minutes, he told the officers he was "sick of this crap" and wanted to go home. At that point, he was placed in handcuffs then put in a police car.

"[H]andcuffs are generally recognized as a 'hallmark of a formal arrest'". Bailey, 743 F.3d at 340 (quoting Newton, 369 F.3d at 674). An officer's use of handcuffs does not turn a stop into an arrest if the officer has a "reasonable basis to think

7

that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat." Id.; see Grice v. McVeigh, 873 F.3d 162, 168 (2d Cir. 2017) (when lone officer was investigating report of railroad track sabotage, it was permissible to briefly handcuff person standing near tracks with several electronic devices). Defendants contend that the use of handcuffs was necessary because of Seamans's "animated" behavior and "interference" with the investigation.[4] This argument is unavailing because Seamans denies engaging in such conduct. He admits only that he may have used "a voice that didn't sound right" to the officers.

Crediting Seamans's version, the defendants are not entitled to qualified immunity. The Supreme Court has not established a bright-line test for determining when a stop turns into an arrest. Even so, at the time of the incident, it was clearly established that reasonable suspicion to believe a person has committed a non-violent crime is not enough to justify the use of handcuffs during a stop. See Bailey, 743 F.3d at 341 (though officers had reasonable suspicion to believe suspect was involved in drug trafficking and firearm possession, use of handcuffs exceeded reasonable bounds of investigatory stop because suspect posed no apparent threat). If Seamans's version is accepted, the

---

[4] Defense counsel stated at oral argument that the defendants were motivated by concern for their safety. However, none of the officers testified that Seamans posed a threat.

8

use of handcuffs was not objectively reasonable.

B. <u>Excessive Force</u>

It is well-established that a police officer's use of excessive force in the course of a stop or arrest violates the Fourth Amendment. However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (quotations and citations omitted). "In measuring 'reasonableness,' [courts] consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." <u>Thomas v. Roach</u>, 165 F.3d 137, 143 (2d Cir. 1999) (citing <u>Graham</u>, 490 U.S. at 396).

The record in this case does not compel a finding that the amount of force used was reasonable. As just discussed, a jury could find that the officers were not entitled to use handcuffs. Moreover, accepting Seamans's version, he did not "stiffen" his right arm until after Schiffer twisted his left arm with enough force to tear his rotator cuff. At a minimum, disputed issues of material fact are presented with regard to the reasonableness of the officers' use of force.

Nor are the officers entitled to qualified immunity on the excessive force claim. When, as here, "the circumstances are in

9

dispute, and contrasting accounts . . . present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002) (quotation omitted). Compare id. (officers not entitled to qualified immunity as a matter of law when plaintiff who denied assaulting officer was "literally dragged off to jail in handcuffs, her arm wrenched out of its socket") with Brown v. City of New York, 862 F.3d 182, 188-90 (2d Cir. 2017) (qualified immunity appropriate when it was undisputed that plaintiff refused to comply with officers' orders and officers warned her prior to using pepper spray and forcing her to the ground).

    C. Failure to Intervene

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used . . . ; (2) that a citizen has been unjustifiably arrested . . . ; or (3) that any constitutional violation has been committed by a law enforcement official. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). "[F]or liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. . . . Whether an officer had sufficient time to

intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  Id.

The officers are not entitled to summary judgment on this claim because the record, viewed fully and most favorably to the plaintiffs, permits a finding that each of the officers had a realistic opportunity to prevent the others from making an arrest without probable cause or using excessive force.  Defendants argue that Officer Selander was not in a position to intervene.  However, plaintiffs point to Officer Schiffer's deposition testimony, which suggests Selander was approximately a "car length" away from Seamans when he was placed in handcuffs.  Defendants argue that plaintiffs misconstrue this testimony, but the testimony permits an inference that Officer Selander was nearby.[5]  Moreover, the police report filed by Officer Miller states that one of the reasons the officers decided to handcuff Seamans was that he was "hindering Officer Selanders [sic] ability to conduct a thourough [sic] investigation."  A jury could reasonably infer that for Seamans to have "hindered" Officer Selander, the two must have been in close proximity to each other.

---

[5] Officer Schiffer testified that Selander was "off to the side" during the incident but was unsure of the exact distance.  He said Selander was over five feet away but "could" have been "one car space away."

11

D. The Claims Against the Town

To prevail on the Monell claims, plaintiffs must prove that the Fourth Amendment violations allegedly committed by Officers Miller and Schiffer were caused by the Town's own wrongdoing. Reynolds v. Giuliani, 506 F.3d 183, 190-91 (2d Cir. 2007) (2d Cir. 2008) (citing Monell, 436 U.S. at 695). This requires proof that the Town's alleged failure to adequately supervise and train these officers was due to deliberate indifference to the rights of persons who would come into contact with them. See Reynolds, 506 F.3d at 192. The record does not support such a finding.

With regard to the failure-to-supervise claim, plaintiffs must show "that 'the need for more or better supervision to protect against constitutional violations was obvious,' but th[e] [Town] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)). Typically, an "obvious" need is demonstrated by "repeated complaints of civil rights violations" followed by "no meaningful attempt on the part of the municipality to investigate or forestall further incidents." Vann, 72 F.3d at 1049. Plaintiffs offer no evidence of other similar incidents involving these or any other officers in Canton.

Plaintiffs note that "a single, isolated act of brutality might be sufficient to allow a factfinder to infer deliberate indifference if the use of force were so extreme as to leave no doubt that [the policymaker] consciously chose not to act." Amnesty Am., 361 F.3d at 129. But plaintiffs have not shown (or even suggested) that the relevant policymaker (presumably Chief Arciero) was at the scene of the incident, or even that he was aware or should have been aware that his subordinates might violate Fourth Amendment rights in the manner alleged. Cf. id. (plaintiff's claims survived summary judgment because "the evidence allow[ed] the inference that [the relevant policymaker] himself witnessed (and perhaps encouraged) the unconstitutional conduct, and that the conduct was so blatantly unconstitutional that [the policymaker]'s inaction could be the result of deliberate indifference").

The record also fails to support a failure-to-train claim. To prevail on this claim, plaintiffs must "identify a specific deficiency in the [Town's] training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am., 361 F.3d at 129 (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)). Plaintiffs have not identified any deficiencies in the Town's training. Again, they rely solely on

13

the "single egregious act" theory of liability, which is unavailing here.

E. State Law Claims

Plaintiffs bring state law claims against Officers Miller and Schiffer for negligence, recklessness, negligent infliction of emotional distress ("NIED"), and loss of consortium. Defendants contend that they are entitled to summary judgment on these claims because they have qualified immunity under state law. I disagree.[1]

Municipal employees have qualified immunity under state law with respect to "discretionary" acts, including the manner in which an officer makes an arrest. See Belanger v. City of Hartford, 578 F. Supp. 2d 360, 366 (D. Conn. 2008) (citing Conn. Gen. Stat. § 52-557n); Galindez v. Miller, 285 F. Supp. 2d 190, 195 (D. Conn. 2003)). Under the "identifiable person-imminent harm" exception, however, an officer is not immune "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." Spears v. Garcia, 263 Conn. 22, 36, 818 A.2d 37 (Conn. 2003); see also Doe v. Petersen, 279 Conn. 607, 616, 903 A.2d 191 (Conn. 2006) (plaintiff must show "(1) an

---

[1] Defendants also argue that the record does not support an NIED claim on the ground that their actions "were entirely reasonable." As explained above, however, if the jury believed Seamans's version, it could find that the officers' actions were unlawful.

14

imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm").

The record supports a finding that the identifiable person-imminent harm exception applies to the defendants' conduct. Courts routinely apply this exception to claims alleging use of excessive force. See Belanger, 578 F. Supp. 2d at 367 (collecting cases). An arrestee is clearly an "identifiable" person who is subject to "imminent" harm if the arrest is conducted in an unreasonable manner. See Galindez, 285 F. Supp. 2d at 195.

Defendants' argument that they are entitled to qualified immunity on the NIED claim requires further comment. The identifiable person-imminent harm exception applies only when the "imminent harm" is physical in nature. See Bento v. City of Milford, No. 3:13-CV-1385 (JBA), 2014 WL 1690390, at *7 (D. Conn. Apr. 29, 2014) ("[A]bsent some concrete manifestation of physical symptoms, Plaintiffs' claims fail to fall into the identifiable person-imminent harm exception."). Some courts have declined to apply the exception with respect to NIED claims when no physical harm has ensued. See Pane v. City of Danbury, No. CV-97347235S, 2002 WL 31466, 332, at *8-9 (Conn. Super. Oct. 18, 2002). Here, however, Seamans sustained a torn rotator cuff, which required surgery and resulted in prolonged physical pain.

III. Conclusion

Accordingly, the motion for summary judgment is granted with regard to the claims against the Town but denied as to the claims against the officers.

So ordered this 7th day of August 2018.

```
                          /s/
                 Robert N. Chatigny
              United States District Judge
```